## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| DARIO GIMENEZ,[1] <br><br> Plaintiff, <br><br> v. <br><br> BOROUGH OF ELMWOOD PARK, WILLIAM WOODS, THOMAS KOCHIS, JOHN AND JANE DOE(S), *1-10 (fictitious persons yet to be identified)*, MICHAEL FOLIGNO, ANDREW DRAING, CHARLES KEENAN, and MICHAEL PRELICH, <br><br> Defendants. | Civil Action No. 2:17-cv-07177 |

## OPINION

Before the Court is Defendants' motion for summary judgment pursuant to Federal Rule of Civil Procedure 56.  ECF No. 87.  For the reasons below, Defendants' motion will be granted.

### I

### A

### 1

In 2015, Defendants Elmwood Park Police Detectives Thomas Kochis and William Woods began investigating activity at 390 Boulevard Avenue in Elmwood Park. Woods Dep. 10:9-15, ECF No. 87-9.  Citizens complained about illegal events at the

---

[1] The Clerk shall correct the docket to correct the spelling of Plaintiff's name, which is Gimenez.

house, and a confidential informant ("CI") reported that drug sales occurred there. Woods Dep. 10:1-8, 10:19-11:1, 17:8-13, ECF No. 87-9; see also Kochis Dep. 21:9-16, ECF No. 87-8.  The citizen complaints specifically named Plaintiff Dario Gimenez as engaging in illegal activity at the house.  Kochis Dep. 49:2-4, ECF No. 87-8; ECF No. 87-5 at 38.  The record shows that Paige Appel and Manuel Vasquez resided at the house and Gimenez spent time there.[2]  Woods Dep. 23:10-25, ECF No. 87-9; Gimenez Dep. I 52:3-8, 54:15-20, ECF No. 88-4.

Law enforcement had contact with these individuals.  For example, on May 24, 2015, Appel was present and talked with police when they responded to an overdose at the house.  ECF No. 87-6 at 49; Woods Dep. 23:10-25, ECF No. 87-9.  On July 11, 2015, police stopped Gimenez following a traffic violation, ECF No. 87-6 at 26; Kochis Dep. 27:8-17, ECF No. 87-8, and observed the cap of a hypodermic syringe near the driver's seat and blood stains on him, ECF No. 87-6 at 26.  A K-9 drug detection dog indicated the presence of drugs, and Gimenez was arrested for possession of drugs and drug paraphernalia.  ECF No. 87-6 at 26-27; see also Kochis Dep. 30:1-9, ECF No. 87-8.

During August and September 2015, Woods and Kochis conducted three controlled drug purchases at 390 Boulevard with the help of the CI.  Each time, Woods

---

[2] Police believed Gimenez lived at 390 Boulevard based on "controlled purchases . . . from Dario Gimenez at that location" and observing him enter and exit the house numerous times.  Woods Dep. 62:20-23, ECF No. 87-9; Kochis Dep. 18:4-21, ECF No. 87-8.  At Gimenez's trial, Appel stated that she and Gimenez shared the upstairs bedroom at 390 Boulevard, ECF No. 88-4 at 200.  Gimenez maintains, however, that he never lived at 390 Boulevard and never stayed overnight there.  Gimenez Dep. I 51:14-25, ECF No. 88-4.

and Kochis parked undercover vehicles outside the house so they had "clear unobstructed view of the residence."  ECF No. 87-5 at 38-41, 50-51; see also ECF No. 87-6 at 3, 10, 18.  For each purchase, the CI called a phone number the CI said belonged to Gimenez.[3] The officers stated that (1) the first call led to the purchase of cocaine from Appel, ECF No. 87-5 at 50; ECF No. 87-6 at 9; (2) the second call led to a purchase of cocaine and marijuana from Gimenez, ECF No. 87-5 at 50-51; ECF No. 87-6 at 17, and (3) the third call, which was unanswered, eventually led to a call to Vasquez and the purchase of cocaine, ECF No. 87-5 at 41, 51; ECF No. 87-6 at 23.  Gimenez denies he sold drugs and asserts that trees on the street would have obstructed a view of the front of the house. Gimenez Dep. I 81:17-82:2, 83:5-17, ECF No. 88-4.

2

Kochis applied for a warrant to search the house, Gimenez, Appel, Vasquez, and anyone in the house "reasonably believed to be associated with this investigation."  ECF No. 87-5 at 41.  According to the affidavit submitted in support of the warrant, (1) Kochis and Woods met with the CI, who (a) advised them that an individual named "Dario" or "D" was "dealing large amounts of illegal narcotics from his residence" at 390 Boulevard, ECF No. 87-5 at 37; (b) provided a phone number for "D," ECF No. 87-5 at 37; and (c) identified a driver's license photo of Dario Gimenez as "D," ECF No. 87-5 at 37-38; (2) the Elmwood Park Police (a) received multiple citizens' complaints concerning drug sales at 390 Boulevard, ECF No. 87-5 at 38; (b) arrested two individuals

---

[3] Gimenez disputes that the phone number was his or Appel's.  Gimenez Dep. I 103:7-104:21, ECF No. 88-4.

on April 1, 2015 for possession and possession with intent to distribute narcotics at 390

Boulevard, ECF No. 87-5 at 38; (c) responded to a heroin overdose at 390 Boulevard on

May 24, 2015, ECF No. 87-5 at 38; (d) arrested Gimenez on July 11, 2015 for drug

offenses, ECF No. 87-5 at 38; and (e) conducted surveillance in which officers observed

drivers park in the driveway of 390 Boulevard, enter the house, "exit a short time later[,]

and then quickly leave the area," ECF No. 87-5 at 38; and (3) the CI conducted three

controlled buys involving individuals connected to 390 Boulevard, ECF No. 87-5 at 38-

41.  Based on this affidavit, a New Jersey Superior Court judge issued the search warrant

on September 18, 2015.  ECF No. 87-5 at 44-47.

3

Members of the Elmwood Park Police's Narcotics Enforcement Unit, including

Defendants Woods, Kochis, Andrew Draing, Charles Keenan, and Michael Prelich,

executed the warrant the same day.  ECF No. 87-5 at 51.  The officers did not use body-

worn cameras ("BWCs").[4]  When officers arrived, they found Vasquez in a living room

and Gimenez and Appel in an upstairs bedroom.  Woods Dep. 70:15-71:13, ECF No. 87-

9.  In the upstairs bedroom, officers found, among other things: (1) clear plastic baggies,

---

[4] The Elmwood Park Police's Mobile/Wearable Video/Audio Recorders (MVR) Policy provides that "[o]fficers engaged in undercover operations or surveillance activities are not required to utilize [body-worn cameras]."  ECF No. 87-10 at 5. Defendant Elmwood Park Police Chief Michael Foligno explained that although BWCs are required for "all police officers in most circumstances," the policy "dictates when they're not to be utilized," including "undercover operations or [on] undercover officers or plain clothes officers."  Foligno Dep. 15:11-18, ECF No. 87-14.  Foligno stated that officers in the Narcotics Enforcement Unit are "always in plain clothes," and that if an officer was "doing an investigation as a plain clothes officer," he would not put on a uniform to execute a warrant.  Foligno Dep. 33:4-7, 34:20-24, ECF No. 87-14.

4

some of which contained a powder suspected to be cocaine, (2) drugs underneath a fish

tank, (3) a smoking pipe, (4) $738 in U.S. currency, (5) a digital scale; and (6) a metal

grinder.  Kochis Dep. 66:9-14, ECF No. 87-8 at 42; ECF No. 87-5 at 51-52; ECF No. 87-

7 at 34, 38-43; ECF No. 88-4 at 237.  Officers took photographs showing Gimenez's

driver's license next to a digital scale, syringes, and plastic baggies on the bedroom's

desk.  See, e.g., ECF No. 87-7 at 38-40.  It is undisputed that the license was moved

before officers took photographs.[5]  See Woods Dep. 78:21-23, ECF No. 87-9; Gimenez

Dep. II 73:7-12, ECF No. 87-9.

Gimenez, Appel, and Vasquez were arrested.  ECF No. 87-5 at 49.  The next day,

September 19, 2015, Woods filed (1) a complaint-warrant against Gimenez for (a)

possession of cocaine and (b) possession with intent to distribute cocaine, ECF No. 88-4

at 406; and (2) a complaint-summons against Gimenez for (a) possession of drug

paraphernalia and (b) possession of hypodermic needles, ECF No. 88-4 at 408.  In a

separate complaint-warrant that Woods filed on September 23, 2015, Gimenez was

charged with possession with intent to distribute cocaine within 500 feet of a public park.

ECF No. 88-4 at 410.  All of the charges were based on the events of September 18,

---

[5] At his deposition, Woods testified that he believed the license was "moved," did not know why, and did not know who moved it.  Woods Dep. 78:12-79:9, ECF No. 87-9. Gimenez testified that his license was in his wallet, Kochis "went into [his] pocket" to get his wallet, Gimenez Dep. I 186:12, ECF No. 88-4, one of the officers moved the license and "put it . . . with the cocaine, . . . the scale, [and] the syringe," and then officers took photographs of the license near the drug-related evidence.  Gimenez Dep. II 73:7-12, ECF No. 87-9.

2015.  Gimenez's bail was set at $100,000.  ECF No. 88-4 at 406.  He did not make bail, so he was detained until trial.  Gimenez Dep. I 157:17-22, ECF No. 88-4.

4

In January 2016, Woods testified before a grand jury that (1) the CI made three drug purchases from 390 Boulevard, ECF No. 87-7 at 7; (2) the search of 390 Boulevard revealed crack cocaine, hypodermic needles, plastic baggies, a scale, a metal grinder, smoking pipes, and $738, ECF No. 87-7 at 8-9; (3) Gimenez, Appel, and Vasquez were occupants of 390 Boulevard, ECF No. 87-7 at 9; and (4) he determined, using a map, that 390 Boulevard was within 500 feet of Gall Avenue Park, ECF No. 87-7 at 12.  The grand jury returned an indictment charging Gimenez[6] with (1) cocaine possession; (2) possession with intent to distribute cocaine; and (3) possession with intent to distribute cocaine in a park zone.[7]  ECF No. 87-7 at 17-18.  Gimenez proceeded to trial in June 2017 on the indicted counts as well his two paraphernalia charges from the complaint-summons.  ECF No. 87-7 at 19; see also ECF No. 88-4 at 408.  He was found guilty of

---

[6] Appel and Vasquez were also charged with various offenses and pleaded guilty to possession with intent to distribute drugs.  ECF No. 88-4 at 327-58.

[7] Maps prepared by Investigator Gerard Robbins a year after the search reveal that the distance between 390 Boulevard Avenue and Gall Park was at least 800 feet.  ECF No. 88-4 at 494-97.  At his deposition in this civil case, Woods testified that he did not know why the park charge was added, but when asked why prosecutors thought 390 Boulevard was within 500 feet of a park, he stated, "We looked at the map.  But the map was, if I recall, outdated."  Woods Dep. 88:2-5, ECF No. 87-9.  Gimenez stated that he "had to write the borough engineer for the maps . . . and then show proof that [390 Boulevard] wasn't within the 500 feet [of a public park]."  Gimenez Dep. I 178:24-179:1, ECF No. 88-4.  He believed that if he had not been charged with the park crime, then he might have received a lower bail.  Gimenez Dep. I 193:14-18, ECF No. 88-4.

6

only possession with intent to use drug paraphernalia and was ordered to pay fines.  ECF No. 87-7 at 19.

B

Gimenez filed suit against the Borough of Elmwood Park, Woods, and Kochis,[8] alleging claims under 42 U.S.C. § 1983 and the New Jersey Civil Rights Act ("NJCRA"), N.J.S.A. § 10:6-2, for false arrest and false imprisonment (Count I); malicious prosecution (Count II); fabrication of evidence (Count III); abuse of process (Count IV); supervisory liability (Count V); and civil conspiracy (VI).  ECF No. 1.  In an Amended Complaint, Gimenez named police officers Draing, Keenan, Prelich, and Chief Michael Foligno as additional defendants, added a Monell claim for municipal liability that repeated his supervisory liability allegations from the original complaint, and renewed his civil conspiracy claim.  ECF No. 73.  Gimenez's parallel NJCRA claims are collectively alleged in Count VII.

Following discovery, Defendants moved for summary judgment, ECF No. 87, which Gimenez opposes, ECF No. 88.  This matter was assigned to the undersigned for the limited purpose of resolving the motion for summary judgment.  ECF No. 98.

---

[8] Gimenez also named the Bergen County Prosecutor's Office as a defendant, but as a result of a stipulation, all claims against it were dismissed.  ECF No. 31.

II[9]

The Court will address each of Gimenez's claims in turn.[10]

A

Gimenez brings federal and state claims for false arrest, false imprisonment, and malicious prosecution.  See ECF No. 73 at 70-97, 118 ¶¶ 17-21, 28-29.  To prevail on each claim, Gimenez must show he was arrested, or charged (in the case of malicious prosecution[11]), without probable cause.  James v. City of Wilkes-Barre, 700 F.3d 675, 680, 682-83 (3d Cir. 2012) (false arrest); Harvard v. Cesnalis, 793 F.3d 190, 202 (3d Cir.

---

[9] On a motion for summary judgment, the Court views the facts and makes all inferences in the non-movant's favor.  Hugh v. Butler Cnty. Fam. YMCA, 418 F.3d 265, 267 (3d Cir. 2005).  Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The moving party is entitled to judgment as a matter of law when the non-moving party fails to make "a sufficient showing on an essential element of her case with respect to which she has the burden of proof."  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

[10] The federal and state claims are analogous and will be analyzed together.  Tumpson v. Farina, 95 A.3d 210, 223 (N.J. 2014); see also Trafton v. City of Woodbury, 799 F. Supp. 2d 417, 443 (D.N.J. 2011) ("This district has repeatedly interpreted NJCRA analogously to § 1983."); Martin v. Cnty. of Atlantic, No. 18-11931, 2019 WL 6318309, *5 n.5 (D.N.J. Nov. 26, 2019) ("[T]he NJCRA is generally interpreted nearly identically to § 1983 and claims under the NJCRA are generally . . . subject to the same defenses and immunities as those brought under § 1983." (quotation marks omitted)).

[11] "Although prosecutors rather than police officers are generally responsible for initiating criminal proceedings, [a]n officer may, however, be considered to have initiated a criminal proceeding if he or she knowingly provided false information to the prosecutor or otherwise interfered with the prosecutor's informed discretion."  Brockington v. City of Philadelphia, 354 F. Supp. 2d 563, 569 (E.D. Pa. 2005) (citation and quotation marks omitted); see also Halsey v. Pfeiffer, 750 F.3d 273, 297 (3d Cir. 2014) ("It is settled law that officers who conceal and misrepresent material facts to the district attorney are not insulated from a § 1983 claim for malicious prosecution . . . .  If the officers influenced or participated in the decision to institute criminal proceedings, they can be liable for malicious prosecution." (citations and quotation marks omitted)).

2020) (false imprisonment); Wright v. City of Philadelphia, 409 F.3d 595, 604 (3d Cir.

2005) (malicious prosecution); Montgomery v. De Simone, 159 F.3d 120, 124 (3d Cir.

1998) (same).  Thus, if the officers had probable cause to arrest Gimenez, each of these

claims fails.  See Wildoner v. Borough of Ramsey, 744 A.2d 1146, 1154 (N.J. 2000)

("[P]robable cause is an absolute defense to Plaintiff's false arrest, false imprisonment,

and malicious prosecution claims[.]").

     Here, we must examine whether the officers had (1) probable cause to search the

residence and (2) probable cause to arrest Gimenez.

                                           1

     Gimenez argues that "Woods and Kochis made misrepresentations and omissions

in their application for a search warrant of 390 Boulevard" by relying on "false"

information from the CI, and thus the search warrant lacked probable cause.  Pl. Br. at 6-

7.  "A section 1983 plaintiff who challenges the validity of a search warrant by asserting

that law enforcement agents submitted a false affidavit to the issuing judicial officer

must . . . prove, by a preponderance of the evidence," that: (1) "the affiant knowingly and

deliberately, or with a reckless disregard for the truth, made false statements or omissions

that create a falsehood in applying for a warrant;" and (2) "such statements or omissions

are material, or necessary, to the finding of probable cause."  Sherwood v. Mulvihill, 113

F.3d 396, 399 (3d Cir. 1997) (citing Franks v. Delaware, 438 U.S. 154, 171-72 (1978)).

"When confronted with an affirmative misrepresentation [or omission] in an affidavit

submitted to procure a search warrant, a court must [correct the] fals[ity in the

affidavit] . . . [and then determine whether] probable cause . . . exist[s] under the corrected affidavit[.]"  Id. at 400.

The warrant here permitted the search of 390 Boulevard for evidence of possession of, possession with an intent to distribute, and conspiracy to possess with intent to distribute, a controlled dangerous substance, see ECF No. 87-5 at 46, in violation of N.J.S.A. §§ 2C:35-10(a)(1), 2C:35-5(a)(1), and 2C:5-2.  The information in the affidavit, even if the CI information is omitted, sets forth probable cause that evidence of these crimes would be found in the house.

First, there was evidence of individuals possessing controlled dangerous substances at 370 Boulevard, as police responded to a heroin overdose at the residence, ECF No. 87-5 at 38; see United States v. Sumlin, 956 F.3d 879, 885-86 (6th Cir. 2020) (concluding search warrant "affidavit set forth probable cause [to search residence of an individual suspected to be in the] illegal drug trade" when, among other things, the individual was linked to "a drug overdose"), cert. denied, 141 S. Ct. 605 (2020); and citizens reported drug activity there, ECF No. 87-5 at 38; see State v. Johnson, 793 A.2d 619, 634 (N.J. 2002) (explaining probable cause can be supported by "information provided by an ordinary citizen").

Second, there was evidence that individuals were distributing drugs and engaged in a conspiracy to distribute drugs from 370 Boulevard because "concerned citizen[s]" reported that individuals were "distributing large amounts of illegal narcotics from [the] residence," ECF No. 87-5 at 38; see Johnson, 793 A.2d at 634; two individuals tied to the residence had prior drug arrests, ECF No. 87-5 at 38, see State v. Jones, 846 A.2d 569,

10

578 (N.J. 2004) (concluding that prior "arrests and convictions were additional factors in the totality of the circumstances justifying [a] judge's conclusion that the police had probable cause to search [a] residence and its occupants"), and police observed individuals enter the house, stay briefly, and quickly leave the area, which the affiant said was consistent with drug sales, ECF No. 87-5 at 38; see State v. Keyes, 878 A.2d 772, 783 (N.J. 2005) (recognizing the limitations of surveillance and explaining that "[t]he fact that the police were unable to observe [a CI entering an apartment] does not prevent a finding of probable cause").

Thus, the affidavit set forth probable cause that evidence of drug crimes would be found at the house even without the CI's information.  Because probable cause supported the search warrant, the officers lawfully entered 370 Boulevard.

2

Probable cause also supported Gimenez's arrest.  Probable cause exists if "at the moment the arrest was made . . . the facts and circumstances within [the officers'] knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the [criminal defendant] had committed or was committing an offense."[12]  Beck v. Ohio, 379 U.S. 89, 91 (1964).  When a person is arrested for multiple offenses, "false arrest or imprisonment claims will necessarily fail if probable cause existed for any one of the crimes charged against the arrestee," but

---

[12] See also Dowling v. City of Philadelphia, 855 F.2d 136, 141 (3d Cir. 1988) ("The proper inquiry . . . is not whether the person arrested in fact committed the offense[,] but whether the arresting officers had probable cause to believe the person arrested had committed the offense.").

"probable cause on one charge does not foreclose a malicious prosecution cause of action based on additional charges for which there was no probable cause," meaning that, for a malicious prosecution claim, "we must consider probable cause as to each of the charges."  Dempsey v. Bucknell Univ., 834 F.3d 457, 477 (3d Cir. 2016) (citations and quotation marks omitted).

Gimenez was arrested for possession of cocaine, possession with intent to distribute cocaine, possession of drug paraphernalia, and possession of hypodermic syringes.  ECF No. 88-4 at 415.  These offenses require proof that Gimenez (1) knowingly possessed hypodermic syringes and other drug paraphernalia with an intent to use it,[13] (2) knowingly possessed drugs,[14] and/or (3) intended to distribute drugs.[15]

There was probable cause to arrest Gimenez for the charged offenses.  First, facts and circumstances support a reasonable belief that Gimenez knowingly possessed drug paraphernalia with an intent to use it because officers found Gimenez and Appel in an upstairs bedroom, Woods Dep. 71:4-8, ECF No. 87-9, alongside a dresser and table with

---

[13] See N.J.S.A. § 2C:36-2(a) (making it a crime to "use, or to possess with intent to use, drug paraphernalia to . . . compound, convert, . . . prepare, test, analyze, pack, repack, store, contain, conceal, ingest, inhale, or otherwise introduce into the human body a controlled dangerous substance."); see also N.J.S.A. § 2C:36-1(a) ("'[D]rug paraphernalia' means all equipment, products and materials of any kind which are used or intended for use in . . . compounding, converting, . . . preparing, testing, analyzing, packaging, repackaging, storing, containing, concealing, ingesting, inhaling, or otherwise introducing into the human body a controlled dangerous substance.").

[14] See N.J.S.A. § 2C:35-10(a) (making it a crime for "any person, knowingly or purposely, to obtain, or to possess, actually or constructively, a controlled dangerous substance . . . .").

[15] See N.J.S.A. § 2C:35-5(a)(1) (making it "unlawful for any person knowingly or purposely . . . to possess or have under his control with intent to . . . distribute . . . a controlled dangerous substance").

multiple hypodermic syringes, a metal spoon with an unknown white substance, a metal grinder, a glass smoking pipe,[16] and a "white bottle containing an unknown white powder like substance," ECF No. 87-5 at 51-52. See State v. Bell, 215 A.2d 369, 372 (N.J. Super. Ct. App. Div. 1965) (concluding probable cause supported a defendant's arrest for possession of drug paraphernalia when officers observed in proximity to the defendant "a needle," "a package in a glassine case with white powder in it" and an "eye dropper," which, based on an officer's five-years of experience, "[wa]s part of the paraphernalia used in the taking of narcotic drugs, mainly heroin"). These items, observed in the bedroom where officers first encountered Gimenez, provided probable cause that Gimenez knowingly possessed drug paraphernalia with an intent to use it.

Second, there was probable cause that Gimenez possessed cocaine because officers also found a "clear plastic baggy containing a white rock like substance suspected to be crack-cocaine located inside of a fish tank stand" in the bedroom where Gimenez was found.[17] ECF No. 87-5 at 51; see State v. Zapata, 687 A.2d 1025, 1034 (N.J. Super. Ct. App. Div. 1997) (explaining that "[t]he fact that [] drugs were discovered hidden in the air-conditioning vent supports the inference that the narcotics were constructively possessed by all of the [occupants of the searched area] because no one possessed the narcotics more than any other person"). While "[a]s a general proposition,

---

[16] See United States v. Nolan, 718 F.2d 589, 597 n.13 (3d Cir. 1983) (describing "paraphernalia" as including syringes and "spoons with powder on them"); United States v. Cardoza, 713 F.3d 656, 658 (D.C. Cir. 2013) (same, as to grinders); Town Tobacconist v. Kimmelman, 462 A.2d 573, 581-82 (N.J. 1983) (same, as to drug "pipe").

[17] Laboratory testing later confirmed that the baggies contained cocaine. ECF No. 88-4 at 265.

criminal possession may not be inferred from defendant's mere presence at the location where the contraband was found," the "other circumstances" here—namely the evidence of drug activity at the residence and the plethora of paraphernalia found in the same bedroom—"permit such an inference to be drawn."  See State v. Shipp, 524 A.2d 864, 865 (N.J. Super. Ct. App. Div. 1987) (quotation marks omitted).

Third, there was probable cause that Gimenez intended to distribute the cocaine because law enforcement observed items consistent with processing, packaging, and selling cocaine, such as "multiple clear plastic zip lock style baggies," a box of baking soda (an agent used to cut pure cocaine), a digital scale, a grinder, a metal bowl with residue, and $738 of cash in the bedroom.  ECF No. 87-5 at 51-52; see State v. Rodriguez, 245 A.3d 598, 626 (N.J. Super. Ct. App. Div. 2021) ("[A]ll of the surrounding circumstances[, including] . . . any evidence as to the quantity, purity, and packaging of [the controlled substance] together with all the other evidence in the case [may be considered] to aid [] in [the] determination of . . . intent to distribute.").[18]

Probable cause also existed to charge Gimenez with possession with intent to distribute cocaine within 500 feet of a public park in violation of N.J.S.A. § 2C:35-7.1A.  ECF No. 88-4 at 410.  The officer relied on a certified map from his police station later found to be inaccurate.  See ECF No. 87-7 at 12; ECF No. 88-4 at 494-97.  Gimenez, however, has failed to show why the officer's reliance on this map at that time was not

---

[18] The fact that Gimenez's driver's license was photographed at multiple locations in the house, suggesting it was moved by law enforcement when photographing the scene, see Pl. Br. at 17, Woods Dep. 54:9-19, ECF No. 87-9, does not negate the rest of the evidence found during the search that supported probable cause for Gimenez's arrest.

reliance on "reasonably trustworthy information . . . sufficient to warrant a prudent man in believing that [Gimenez] had committed . . . [the] offense." See Beck, 379 U.S. at 91.

Thus, there was probable cause to arrest Gimenez for the charged offenses, so Gimenez's false arrest, false imprisonment, and malicious prosecution claims all fail. Accordingly, the Court will grant Defendants' motion for summary judgment as to these claims in Counts I, II, and VII.

B

Gimenez's fabricated evidence claim also fails. An acquitted criminal defendant may bring a fabricated evidence claim under the Fourteenth Amendment's due process clause where there is a "reasonable likelihood" that he would not have been criminally charged absent that fabricated evidence. Black v. Montgomery Cnty., 835 F.3d 358, 371 (3d Cir. 2016). An acquitted defendant must draw a "meaningful connection" between his injury and the use of fabricated evidence against him. Id. at 372. There is a high bar for evidence to be considered fabricated. For example, "testimony that is incorrect or simply disputed should not be treated as fabricated merely because it turns out to have been wrong." Id. (quoting Halsey v. Pfeiffer, 750 F.3d 273, 295 (3d Cir. 2014)). Additionally, an acquitted defendant must show "persuasive evidence" that the proponents of the evidence were aware that evidence was incorrect or that the evidence was offered in bad faith. Id.

Gimenez argues that officers placed his driver's license near drug-related evidence including plastic bags, two syringes, a digital scale, and baking soda to implicate him in drug dealing. ECF No. 87-7 at 38-40. According to Gimenez, Kochis took Gimenez's

15

wallet from his pocket and his license was removed from the wallet. Gimenez Dep. II 33:11-17, 86:9-18, ECF No. 87-9. Gimenez contends that his license was then placed by the drug-related evidence. Gimenez Dep. II 73:5-12, ECF No. 87-9. There is no dispute that the license was moved. Indeed, Woods testified that the photographs indicated to him that the license had been moved, but he did not know why or who moved it. Woods Dep. 77:15-79:9, ECF No. 87-9; see Gimenez Dep. II 73:5-12, ECF No. 87-9. He further testified that department policy and training instructs officers not to move evidence before it is photographed. Woods Dep. 72:21-73:10, ECF No. 87-9.

Despite this undisputed evidence, no reasonable jury would conclude that there was a reasonable likelihood that Gimenez would not have been charged absent the inclusion of his driver's license in some photographs of evidence. While Gimenez focuses on the introduction of these photographs at his trial, and the movement of the license to place it in multiple photographs of drug-related evidence is troubling, the pertinent inquiry of an acquitted defendant's fabricated evidence claim focuses on the decision to bring criminal charges. Black, 835 F.3d at 371. Gimenez has not established that the inclusion of his license in the photographs influenced the decision to bring criminal charges against him. While the inclusion of the license in the photographs creates a link between Gimenez and the paraphernalia, there was other evidence linking Gimenez to the drug activity at the house, including the drugs, drug-related items, and cash found in the bedroom which he occupied. ECF No. 88-4 at 237; ECF No. 87-5 at 51-52.

Because Gimenez has not demonstrated that there was a reasonable likelihood that he would not have been charged if the license was not included in some photographs,[19] the Court will grant Defendants' motion for summary judgment on Gimenez's fabricated evidence claims in Counts III and VII.

C

Gimenez also brings an abuse of process claim against Woods, asserting he "add[ed] the charge against [him] for drug distribution within 500 [feet] of a public park," despite the absence of probable cause, "to enhance [his] exposure and increase his bail." Pl. Br. at 20.

To prove abuse of process, a plaintiff must show that the defendant (1) had an ulterior motive when (2) engaging in "some further act after the issuance of process representing the perversion of the legitimate use of the process." Fielder Agency v. Eldan Constr. Corp., 377 A.2d 1220, 1222 (N.J. Super. Ct. App. Div. 1977).  The absence of probable cause is not an element of an abuse of process claim, Simone v. Golden Nugget Hotel & Casino, 844 F.2d 1031, 1036-37 (3d Cir. 1988) (citing Ash v. Cohn, 194

---

[19] Gimenez also failed to demonstrate that the evidence was offered in bad faith.
To the extent Gimenez also argues that the statements relating to a controlled buy from a CI in the search warrant application and grand jury testimony were "falsified," he cannot obtain relief.  First, the criminal charges presented to the petit criminal jury were not predicated on the CI's activity.  Second, even though he denies the CI's information, he has not met the high bar of demonstrating evidence has been fabricated.  Incorrect or disputed testimony will not be treated as fabricated even if "it turn[ed] out to have been wrong."  Black, 835 F.3d at 372 (quoting Halsey, 750 F.3d at 295); see also Boseman v. Upper Providence Twp., 680 F. App'x 65, 70 (3d Cir. 2017) (rejecting fabrication of evidence claim where plaintiff merely denied conclusions of officer in police report as plaintiff could show no "actual evidence" of fabrication).

A. 174 (N.J. 1937)), and thus it is distinct from a malicious prosecution claim, Ash, 194 A. at 176 ("[T]he action for abuse of process lies for the improper, unwarranted, and perverted use of process after it has been issued[,] while that for the malicious use of it lies for causing process to issue maliciously and without reasonable or probable cause.").

On September 19, 2015, Woods signed a complaint-warrant and a complaint-summons that charged Gimenez with four crimes: possession of cocaine, possession with intent to distribute cocaine, possession of drug paraphernalia, and possession of hypodermic needles.  ECF No. 87-5 at 55-56.  On September 23, 2015, Woods signed a complaint-warrant that charged Gimenez with possession with intent to distribute cocaine within 500 feet of a public park in violation of N.J.S.A. § 2C:35-7.1A.  ECF No. 88-4 at 410.  While each complaint specifies that the underlying conduct occurred on September 18, 2015, ECF No. 87-5 at 55-56; ECF No. 88-4 at 410, the public-park charge was added after criminal process was initiated against Gimenez on September 19, 2015.  Woods thereafter testified before a grand jury that 390 Boulevard was within 500 feet of Gall Avenue Park based on a certified police station map.  ECF 87-7 at 11.  The grand jury returned a multi-count indictment on January 27, 2016, that included the public-park count.  ECF No. 87-7 at 17-18.

Gimenez points to two of Woods' actions as the basis for his abuse of process claim.  First, he argues that Woods "falsely swore a complaint under oath . . . based on 390 Boulevard being within 500 feet of a public park."  Pl. Br. at 20.  Second, he argues that Woods "falsely testified before the grand jury that 390 Boulevard was within 500 feet of a public park based on a certified map."  Pl. Br. at 20.  Even assuming Woods'

18

role in adding the public-park charge was a "further act" cognizable as an abuse of process, Gimenez has not shown that Woods acted with an improper motive.

To meet the ulterior motive element, the plaintiff must prove that the defendant had an "illegitimate motivation," Esposito v. Little Egg Harbor Twp., No. 08-3725, 2012 WL 1495468, at *4 (D.N.J. Apr. 27, 2012), which is one that seeks "primarily to accomplish a purpose for which [the legal process instituted] is not designed," Restatement (Second) of Torts § 682 (1977). See also Parness v. Christie, No. 15-3505, 2015 WL 4997430, at *14 (D.N.J. Aug. 19, 2015) ("Where the primary motivation for an action is proper, but that action is in some way also fueled by an incidental motive or spite or an ulterior purpose, there is no abuse of process." (quotation marks omitted)). Courts have described the motive element as requiring a "coercive or illegitimate" use of the judicial process. See, e.g., Fielder Agency, 377 A.2d at 1222 (collecting cases); Ortiz v. Ocean Cnty. Prosecutor's Office, No. 03-3732, 2006 WL 2938825, at *5 (D.N.J. Oct. 13, 2006) (requiring "ulterior motive to coerce or oppress the plaintiff"). The improper motive, however, need not be "evil" or malicious. Simone, 844 F.2d at 1039. "Proof of the existence of the ulterior motive may be inferred from the improper act[.]" Ash, 194 A. at 176.

No reasonable jury would conclude that Woods had an illegitimate motivation. There is no evidence showing that the charge was added primarily to serve an end other than for what a criminal charge is designed, i.e., to bring an individual to trial for suspected crimes.

With respect to the flawed map, Gimenez has not shown that Woods knew it was incorrect or that he was unreasonable in relying upon it when he added the public-park charge or testified before the grand jury.  The record reflects that Woods examined a "certified" map from the police station, ECF No. 87-7 at 12, Woods Dep. 88:4-5, ECF No. 87-9, but no documents or testimony suggest that Woods knew the map was inaccurate when he filed the complaint or testified before the grand jury.  Woods testified that he later learned the map he used was outdated, Woods Dep. 88:2-5, ECF No. 87-9, and the charge was dismissed before trial, ECF No. 88-4 at 275.

In addition, Gimenez's allegations about Woods' motives are speculative and thus insufficient to create a triable issue for a jury.  Gimenez asserts Woods added the public-park charge for (1) "[e]mployment accolades," (2) "[f]inancial reward," (3) "[p]ersonal bias, prejudice or animosity," and (4) "[t]o cover up acts of negligence and incompetency."  ECF No. 73 at 23-24 ¶ 104.  Gimenez, however, has adduced no evidence that Woods was motivated by any of these things or that he was "incentivized to abuse the criminal process to limit bail and force a plea."  Pl. Br. at 21.  To the contrary, Woods testified that he could not recall "why [the charge was added] four days later."  Woods Dep. 87:21-23, ECF No. 87-9.  Gimenez's unsupported allegations of ulterior motive are insufficient to defeat summary judgment, and thus, the Court will grant Defendants' motion for summary judgment as to Gimenez's abuse of process claims in Counts IV and VII.

D

Gimenez also brings municipal liability claims, see ECF No. 73 at 24-29 ¶¶ 106-13, 116-21, premised on "Elmwood Park's official policy or custom" of "fail[ing] to instruct, supervise, control and discipline" police officers "in their duties in their use of [BWCs] during the execution of search warrants,"[20] ECF No. 73 at 25 ¶ 108.  According to Gimenez, this allowed Defendants to harass him, "maliciously arrest, imprison, and prosecute" him, and "[c]onspire to violate" his civil rights "by fabricating evidence."[21] ECF No. 73 at 25-26 ¶ 108; see also ECF No. 73 at 13-14 ¶¶ 60-63.

Gimenez's municipal liability claims fail because he has not shown a violation of his rights.  "It is well-settled that, if there is no violation in the first place, there can be no derivative municipal claim."  Mulholland v. Gov't Cnty. of Berks, 706 F.3d 227, 238 n.15 (3d Cir. 2013); Brown v. Commonwealth of Pa., Dep't of Health Emergency Med. Servs. Training Inst., 318 F.3d 473, 482 (3d Cir. 2003) ("[F]or there to be municipal liability, there . . . must be a violation of the plaintiff's constitutional rights.").  For the

---

[20] Although Gimenez argues that the purported BWC policy or custom violates the New Jersey Attorney General's policy statement, Pl. Br. at 24-25, he does not contend that "the policy or custom itself violates the Constitution."  Thomas v. Cumberland Cnty., 749 F.3d 217, 222 (3d Cir. 2014) (quoting Colburn v. Upper Darby Twp., 946 F.2d 1017, 1027 (3d Cir.1991)); cf. Graham v. Rowe, No. 19-cv-6757, 2019 WL 3059801, at *4 (D.N.J. July 10, 2019) ("There is no constitutional right to be free from an arrest that is not recorded by a camera.").

[21] Although Gimenez mentions Brady v. Maryland, 373 U.S. 83, 87 (1963), in his opposition brief, Pl. Br. at 24-25, the Court does not understand Gimenez to contend that a Brady violation occurred, see Reply Br. at 12-13 (arguing the Court should decline to consider Gimenez's Brady claim).  Instead, Gimenez's discussion of Brady appears related to his causation argument and not an underlying constitutional violation on which his municipal liability claim could rest.

reasons discussed above, Gimenez has failed to establish any material disputed issues of

fact exist that, if proven, would show his civil rights were violated.[22]  Accordingly, the

---

[22] Even if Gimenez had established such violations, his state and federal municipal liability claims would still be dismissed because no reasonable jury could conclude either (a) the policy or custom Gimenez identifies or (b) or the failure to train and supervise Gimenez asserts caused Gimenez's claimed constitutional injuries.

First, Gimenez has not adduced evidence indicating that his alleged false imprisonment, false arrest, and malicious prosecution were caused by the purported policy or custom of not requiring plain-clothes officers to use BWCs when executing search warrants.  The evidence supporting the search warrant was developed before the search, so a policy requiring BWCs to be activated during the search would not have affected the information set forth in the warrant.  Further, Gimenez has not adduced evidence from which a reasonable jury could conclude that he would not have been arrested or prosecuted if officers were equipped with BWCs.

Second, no reasonable jury could conclude the BWC policy or custom was the "moving force" behind Gimenez's alleged injury from fabrication of evidence.  Thomas, 749 F.3d at 222.  Gimenez fails to set forth evidence suggesting that officers are more likely to fabricate evidence in the absence of body cameras.  Cf. Jones v. Louisville/Jefferson Cnty. Metro Gov't, 482 F. Supp. 3d 584, 597-98 (W.D. Ky. 2020) (finding causation plausibly alleged because it was "plausible to infer that un-filmed officers may act differently than those who are under surveillance" and plaintiff "plead[] [the] fact . . . that officers confiscated and destroyed Plaintiffs' surveillance footage of the raid in question"); Baldwin v. Colley, No. 15-cv-02762, 2015 WL 5836923, at *4-5 (N.D. Cal. Oct. 7, 2015) ("The Court is unpersuaded by the argument that recurring situations in Antioch and across the nation have made it plainly clear that police misconduct is highly predictable in the absence of body-cams." (quotation marks omitted)).  Moreover, Defendants' "recording policy [or custom] . . . would [not] have served as the moving force behind . . . the officers' allegedly intentional decision," McKnight v. City of Topeka, No. 19-cv-2353, 2020 WL 5747917, at *20 n.21 (D. Kan. Sept. 25, 2020), to fabricate evidence, see N.J.S.A. § 2C:28-6; Woods Dep. 72:21-73:10, ECF No. 87-9.  Rather, the moving force behind his claim would be the placement of Gimenez's license near drug-related evidence, which no one disputes occurred.

As to Gimenez's allegations that Defendants failed to train and supervise, no reasonable jury could conclude that such purported failure caused Gimenez's asserted constitutional injuries.  See ECF No. 73 at 25-26 ¶ 108.  First, additional training, supervision, or direction on how or when use BWCs would not have made a difference here because the policy or custom Gimenez highlights precluded their use during the search.  In other words, "a hypothetically well-trained officer would [not] have acted [differently] under the circumstances."  Thomas, 749 F.3d at 226 (quoting City of Canton

Court will grant Defendants' motion for summary judgment as to Gimenez's <u>Monell</u>

claim in Count V and parallel NJCRA municipal liability claim in Count VII.

E

Gimenez's conspiracy claim also fails.  To prevail on a claim for conspiracy to

violate civil rights, a plaintiff show that "(1) two or more persons conspire to deprive any

person of [constitutional rights]; (2) one or more of the conspirators performs . . . any

overt act in furtherance of the conspiracy;" (3) the "overt act injures the plaintiff in his

person or property or deprives the plaintiff of any right or privilege of a citizen of the

United States," and (4) "the conspirators act[ed] under the color of state law."  <u>Jutrowski</u>

<u>v. Twp. of Riverdale</u>, 904 F.3d 280, 294 n.15 (3d Cir. 2018) (quotation marks omitted).

Because Gimenez has not established that he suffered any constitutional injury, he cannot

succeed on a civil rights conspiracy claim.  Thus, Defendants are entitled to summary

judgment on Gimenez's conspiracy claims in Counts VI and VII.

III

For the foregoing reasons, the Court will grant Defendants' motion for summary

judgment.

---

<u>v. Harris</u>, 489 U.S. 378, 391 (1989)).  Second, the purported lack of training on how and
when to use BWCs is not "closely related" to Gimenez's injuries.  Gimenez does not
explain how, or point to evidence that, a lack of further training on BWCs caused officers
to purportedly move evidence or testify inaccurately about the distance to the park.

For these additional reasons, Defendants are entitled to summary judgment on
Gimenez's municipal liability claims.